UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 09-01-KSF

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                  **OPINION & ORDER**

ROBERT ERNEST SILVEY                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the defendants' motions to suppress [DE #13, #14]. Having been fully briefed, the Court conducted a suppression hearing on March 13, 2009. Based on the arguments and evidence presented at the suppression hearing, as well as the parties' briefs, the Court concludes that the defendants' motions to suppress should be denied.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In March 2008, Wilson S. Harmon, an agent for the Buffalo Trace Regional Narcotics Task Force ("BTRNTF"), received information from BTRNTF Chairman Bill Boggs about an anonymous call he received identifying a Vietnam veteran in the Fleming County, Kentucky area involved in the distribution of marijuana and the possession of automatic weapons. Although the caller refused to provide his name, the caller stated that the person had built a new home with an indoor marijuana grow operation in the basement, that the house was behind a locked gate, and that the caller suspected surveillance cameras were set up on the person's property.

1

The BTRNTF agents began to investigate the anonymous tip. On October 23, 2008, Chairman Boggs informed Agent Harmon that the anonymous caller gave him the name "Robert Silvey." Agent Harmon and Agent Reta Harris researched Silvey's criminal history and determined that he was a convicted felon. They also determined that he lived at 2665 U.S. 68, Ewing, Fleming County. Agents Harmon and Harris then interviewed Silvey's neighbors, learning that he had been living in the area for about 5 years, and that he often fired what they believed were automatic weapons.

The agents then performed surveillance of Silvey's residence from an adjoining piece of property. Silvey's residence is located at the end of a lane/driveway that is approximately 300 yards long. It is the only house located on the lane/driveway. On October 27, 2008, Agents Harmon and Harris conducted a trash pull of Silvey's garbage bags located in front of the mailbox at the entry of the lane/driveway leading to his residence

The trash bags were taken to BTRNTF headquarters and examined. Inside the trash bags, the agents found pieces of fresh green marijuana, which, according to Agent Harmon, were consistent with marijuana that had been cultivated for distribution. The trash bags also contained a receipt from Fleming Drugs in the name Teresa Silvey, with the listed address of 2665 U.S. 68, Ewing, Kentucky. The agents knew Teresa Silvey to be Robert Silvey's wife.

Based on the discovery of marijuana, the receipt in the trash pull, and the other information learned during their investigation, the agents contacted the Fleming County Attorney's Office and requested that a search warrant be prepared for the residence at 2665 U.S. 68, Ewing, Fleming County, Kentucky. Agent Harmon was the affiant for the search warrant. As grounds for the search warrant, Agent Harmon's affidavit states:

> A criminal records check was made on Robert Silvey. We discovered Robert Silvey had a prior felony conviction before the Mason Circuit Court. We interviewed neighbors and discovered there had been gun fire that neighbors believed would be consistent with automatic weapons. On October 27, 2008, at 1:50 p.m., we seized two trash bags from the right-of-way outside the lane leading to 2665 US 68. Upon going through the trash bags we discovered what appeared to be fresh green marijuana. Based on my training and experience, the fresh green marijuana found would be consistent with the grooming of cultivated marijuana to enhance the buds, weight and value of marijuana. There was a pharmacy receipt in the trash that showed Teresa Silvey had gotten a prescription filled. Teresa Silvey is the spouse of Robert Silvey.

[DE #15-7].

The search warrant was signed by Fleming County District Judge at 4:16 p.m. on October 27, 2008 [DE #15-8]. Then, at approximately 5:00 p.m. that day, BTRNTF Agents Harmon, Harris, and Tim Fegan, members of the Fleming County Sheriff's Office, and members of the Mason County Sheriff's Office executed the search warrant at the Silvey's residence. Upon entry into his residence, agents found Robert Silvey was the only person home. Agent Harris testified that Silvey was detained, read a copy of the warrant, and advised of his *Miranda* rights. The search revealed numerous firearms, an indoor marijuana grow operation with nine active plants, three pounds of processed marijuana, and various items of drug paraphernalia.

After the search, Silvey was interviewed by Agent Fegan, who did not re-*Mirandize* Silvey, but confirmed that Silvey had just been advised of his rights and knew those rights. A tape recording of the interview reveals that Silvey answered affirmatively. Silvey admitted during Fegan's interview that he grew and possessed the marijuana found in the basement. He also admitted to possessing the firearms found during the search. Finally, he admitted that he was a convicted felon.

The next day, ATF Special Agent Rob Young and BTRNTF Agents Harmon and Harris interviewed Silvey at his residence. Special Agent Young confirmed that Silvey had been

*Mirandized* the previous day, that he understood those rights still applied, and that this interview was voluntary. Again, the tape recording reveals that Silvey admitted to growing, possessing, and using the marijuana found at his residence. He also again admitted that he possessed the firearms and that he was a convicted felon based on convictions in the Mason Circuit Court in the 1970s.

On January 8, 2009, a federal grand jury returned a six count indictment against Silvey, charging him with various firearms and drug crimes [DE #1]. This matter is currently set for trial on March 23, 2009. On March 4, 2009, Silvey filed two motions to suppress. In the first motion, Silvey moves the Court to suppress and exclude any statements he made in response to police interrogations because he alleges that he was never advised of his rights under *Miranda v. Arizona*, 384 U.S. 475 (1966) [DE # 13]. In the second motion, Silvey moves the Court to suppress and exclude the fruits of the October 27, 2008 search of his residence because he alleges that the search warrant affidavit did not establish probable cause and, as a result, the search warrant was unlawful [DE # 14].

II.   ANALYSIS

    A.   THE SEARCH WARRANT

First, Silvey moves the Court to exclude both the fruits of the October 27, 2008 search of his residence and the subsequent statements he made to the investigating agents because the search warrant affidavit by Agent Harmon did not establish probable cause. Specifically, Silvey contends that the affidavit is based on informant tips, lacks any indication of informant veracity, reliability, or basis of knowledge, and is without any meaningful corroboration. Silvey argues that because this court is limited to considering only ". . . the information presented in the four corners of the affidavit," *United States v. Coffee*, 4343 F.3d 887, 892 (6th Cir. 2006), it must reject any facts

submitted by the United States which are not contained in the affidavit. Silvey also argues that the time lag between March 2008, when Agent Harmon received information from Boggs that Silvey "had been growing" marijuana, until October 2008, when the search warrant was executed, makes the information stale. Finally, Silvey argues that the affidavit fails to allege any nexus between the place to be searched and any illegal activity.

Silvey's claims are based on the Fourth Amendment to the Constitution, which states that "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV. The Supreme Court has held that when determining whether probable cause for a search exists, the judge issuing the warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The duty of a reviewing court, such as this Court, "is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id*. Generally, a state court judge's determination of probable cause is to be afforded "great deference" and should be scrutinized in a "realistic and commonsense" manner. *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983).

In this case, the information about Silvey's marijuana growing activities, provided by Boggs to Agent Harmon in March 2008, were subsequently corroborated by the marijuana discovered during the trash pull on October 27, 2008. Although Boggs' source of information was an

anonymous informant, the agents independently corroborated the information through their own investigation and trash pull. *See United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008); *United States v. Yarborough*, 272 Fed. Appx. 438, 442 (6th Cir. 2007)(citing *Gates*, 462 U.S. at 243-44). According to Agent Harmon's affidavit, the trash was recovered from the "right-of-way outside the lane leading to 2665 U.S. 68." The trash bags contained "fresh green marijuana," which, based on Agent Harmon's "training and experience" was consistent with the grooming of cultivated marijuana to enhance the buds, weight and value of marijuana." According to the affidavit, the trash bags also contained a receipt showing that Teresa Silvey, the known spouse of Robert Silvey, had filled a prescription.

As noted by the United States, this case is similar to the facts in *United States v. Pressley*, 828 F.2d 405, 1991 WL 32362 (6th Cir. Mar. 11, 1991). In *Pressley*, the affidavit accompanying the search warrant contained information from an anonymous informant that late in 1988 the defendant was engaged in the narcotics trade. Later, in February 1989, the police conducted a trash pull and found baggies containing cocaine residue. Based on the information from the anonymous informant and the baggies with cocaine residue, the officers obtained a search warrant for the defendant's residence. The search revealed the defendant in the home, as well as a substantial amount of cocaine, weapons, and money. The defendant moved to suppress the evidence, arguing that the affidavit improperly relied on a tip by an anonymous informant. The district court rejected the defendant's argument, and the appellate court upheld, stating "[t]he affidavit recited the far more significant fact of the discovery of baggies containing traces of cocaine base in the defendant's curbside trash." *Pressley*, at *4. Like *Pressley*, the affidavit in this case did not rely solely on information from an anonymous tip. Instead, the agents conducted a further investigation yielding

6

substantial evidence - namely fresh green marijuana found in curbside trash containing other evidence (a receipt with Teresa Silvey's name) linking the trash to the residence to be searched - that a search would yield evidence of wrongdoing.

To the extent that Robert Silvey argues that nothing in the trash connects him to the residence, it is important to note that the search warrant was for the residence located at 2665 U.S. 68 Ewing, Fleming County, Kentucky, and/or the persons of "Robert Silvey, Teresa Silvey, or any persons found on the premises." In the Sixth Circuit, "a nexus between the place to be searched and the item to be seized may sometimes be inferred." *United States v. Higgins*, ___ F.3d ___, 2009 WL 465537, *7 (6th Cir. February 26, 2009). For example, "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *See United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008). Here, the trash pull had revealed not only "fresh green marijuana . . . consistent with the grooming of cultivated marijuana," but also a receipt with Teresa Silvey's name, thereby linking the trash, and thus the marijuana, to the Silvey residence. It just so happens that Robert Silvey was at the residence when the agents arrived to execute the search warrant

Silvey's argument that the March 2008 information from Boggs was stale by October 2008 must also be rejected. Even if the March 2008 information had become stale, the October 2008 trash pull refreshed the information. *See United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir 1988)(citing *Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir. 1987)(internal quotations omitted)).

Therefore, based on the totality of the circumstances, including the anonymous tip, the evidence of marijuana recovered from the trash pull, and other information uncovered by the agents and set out in the affidavit, the state judge had substantial basis for concluding that there was

7

probable cause that a search would uncover evidence of wrongdoing at the Silvey's residence. Accordingly, the evidence and statements resulting from the October 27, 2008 search were not obtained in violation of Silvey's Fourth Amendment rights and, therefore, his motion to suppress will be denied.

Nevertheless, even if the Court determined that search warrant affidavit lacked the necessary probable cause under the Fourth Amendment, the "good faith" exception to the exclusionary rule applies to this case. While the exclusionary rule generally precludes use of evidence obtained in violation of the Fourth Amendment, the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Leon*, 468 U.S. at 905. According to the Sixth Circuit,

> Where an officer's reliance on a warrant is objectively reasonable, the Supreme Court held, no additional deterrent effect will be achieved through the exclusion from evidence of the fruits of that search. However, the good-faith exception is inapposite in four situations: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Rice*, 478 F.3d 704, 711-12 (6th Cir. 2007)(internal quotation marks and citations omitted); *see also Herring v. United States*, ____ U.S. ____, 129 S.Ct. 695 (2009).

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's

authorization." *Leon*, 468 U.S. at 922 n.23. Determining that the officer's reliance on the warrant was objectively reasonable requires "'a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)(en banc)(quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002).

In this case, there is no evidence that any circumstances are present that would negate the good-faith exception. Silvey has not argued that Agent Harmon gave a knowingly false affidavit or otherwise acted in bad faith in seeking the search warrant. Nor has Silvey alleged that the search warrant was issued by an improper or biased authority. While the affidavit certainly could have included more details related to the Silveys or the BTRNTF agents' investigation, it is not bare bones and there has been no showing that the warrant was so obviously deficient that official reliance on it was objectively unreasonable. The search warrant properly identifies the place to be search and was based on an affidavit containing information related to the agents' investigation of Silvey, including a trash pull revealing fresh green marijuana and a receipt in Teresa Silvey's name. The warrant thus provides a sufficient link between the residence and drug activity such that a reasonably well-trained officer would not have known that the search was illegal. Moreover, the fruits of the search verify the accuracy of the information contained in Agent Harmon's affidavit. Accordingly, the good faith exception to the exclusionary rule should apply in this case, and Silvey's motion to suppress the evidence obtained from the search will be denied.

    B.    **ADVICE OF RIGHTS UNDER *MIRANDA***

Next, Silvey argues that he was never advised of his *Miranda* rights prior to being interrogated by the investigating agents. In response, the United States claims that Silvey was

*Mirandized* by Agent Harris during the execution of the search warrant. Approximately fifteen minutes later, Agent Fegan began his custodial interview. At the outset of this interview, Agent Fegan asked Silvey if he had been advised of his *Miranda* rights and whether he understood those rights. Silvey indicated that he had been so advised, that he understood those rights, and that he would speak with Agent Fegan.

The United States also argues that prior to being interviewed by Agents Young, Harmon and Harris on October 28, 2008, Agent Young insured that Silvey recalled that he was advised of his *Miranda* rights in the previous interview, and that he understood those rights. Agent Fegan made it clear to Silvey that the interview was strictly voluntary. Silvey stated that he understood his rights and agreed to participate.

It is well settled that before the police may interrogate a suspect in custody, they must first read the *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436 (1966). "A suspect is 'in custody' for purposes of receiving *Miranda* protection if there has been a 'formal arrest or restraint on freedom of movement.'" *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003)(quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)(per curiam)). In this case, the United States apparently does not dispute that Silvey was in custody when the alleged statements were made.

The Supreme Court has held that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). The "critical safeguard" provided by the *Miranda* warnings is the knowledge of "a person's 'right to cut off questioning.'" *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)(quoting *Miranda*, 384 U.S. at 474). As a result, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether

his 'right to cut off questioning' was 'scrupulously honored.'" *Id*. at 103-104 (quoting *Miranda*, 384 U.S. at 474). This Court will have to determine, by a preponderance of the evidence, whether or not Silvey was properly advised of his *Miranda* rights prior to confessing to the marijuana and firearms charges. *See Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984); *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974)("[T]he controlling burden of proof at suppression hearings should impose *no greater burden* than proof by a preponderance of the evidence")(emphasis added)).

From the testimony at the hearing, it is clear that Silvey was properly advised of his *Miranda* rights. Agent Harris testified that she advised Silvey of his *Miranda* rights during the search of his residence. Jared Wagner, a deputy sheriff from Fleming County, testified that he was present when Agent Harris advised Silvey of his *Miranda* rights. Agent Fegan testified that he later asked Silvey if he had been advised of his rights, and Silvey answered affirmatively and advised that he understood those rights. Other than his bare allegation, Silvey has not presented any evidence to the contrary. Accordingly, Silvey's motion to suppress his statements will be denied.

### III.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)   the defendant's motion to suppress evidence based on alleged failure to advise of rights under *Miranda* [DE # 13] is **DENIED**; and

(2)   the defendant's motion to suppress evidence based on an allegedly defective search warrant [DE #14 is **DENIED**.

This March 17, 2009.



**Signed By:**

*Karl S. Forester*  KSF

**United States Senior Judge**